UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**DONNA SPOONER, BYRON WORTHEY, AND LISA HAMILTON,** individually, and on behalf of others similarly situated,

Plaintiffs,

**vs.**

**TRAVEL + LEISURE RESORT DEVELOPMENT, INC.** f/k/a WYNDHAM VACATION OWNERSHIP, INC, a Delaware Company,

Defendant.

Case No.

---

**COLLECTIVE AND CLASS ACTION**
**COMPLAINT AND JURY DEMAND**

Plaintiffs, DONNA SPOONER, BYRON WORTHEY, AND LISA HAMILTON (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Class/Collective Action Complaint against Defendant TRAVEL + LEISURE RESORT DEVELOPMENT, INC. (FORMERLY KNOWN AS "WYNDHAM VACATION OWNERSHIP, INC.") (hereinafter "Defendant"), and state as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and for common law claims of breach of contract or (in the alternative) unjust enrichment.

2. According to its website, Defendant is a global vacation company that delivers

"more than six million getaways each year through a broad portfolio of trusted brands". [1]

3. To service its customers, Defendant employs hourly, remote customer service representatives (hereinafter "CSRs") throughout the country. These CSRs hold a variety of internal job titles, but are all required to perform the same or similar off-the-clock work tasks. For example, Plaintiff Donna Spooner first held the job title of "Customer Service Representative" and later held the job title of "Collections Representative." She has also been referred to as "Associate" by Defendant. In each of those positions, Plaintiff Donna Spooner was required to perform the same or similar off-the-clock work, as further explained herein.

4. The CSRs have some variance in their job titles, but regardless of the internal job titles, all CSRs are subject to the same unlawful policies and procedures discussed herein.

5. Defendant employs CSRs on an hourly basis, but it routinely fails to compensate them for all hours worked, including all overtime hours worked, as discussed herein.

6. In workweeks that the CSRs worked forty or more hours, Defendant's failure to compensate the CSRs for all hours worked resulted in a violation of state and federal overtime laws. *See* 29 C.F.R. §778.315.

7. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry. *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

8. One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal

[1] *See* https://www.travelandleisureco.com/ (last accessed 7/7/26).

activity of the workday." *Id*. at p. 2.

9. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.*

10. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

11. Defendant requires its CSRs to work a full-time schedule, plus overtime, however, Defendant does not compensate CSRs for all work performed.

12. Through its attendance, schedule adherence, and performance metrics, Defendant requires their CSRs to perform compensable work tasks off-the-clock before and after their scheduled shifts, and at the end of their scheduled shifts.

13. This results in CSRs not being paid for all time worked, including overtime.

14. In the course of performing their job responsibilities, Defendant's CSRs use multiple computer networks, software programs, applications and phone systems.

15. The time CSRs spend booting up and logging into these programs and applications before, during, and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the CSRs' work, and they cannot perform their jobs effectively without them.

16. Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

17. Upon information and belief, Defendant's CSRs all follow the same timekeeping process and are subject to the same relevant timekeeping, schedule adherence, performance, and

attendance policies.

18. Plaintiffs seek to represent in this action all current and former CSRs who are similarly situated to each other in terms of their positions, job duties, pay structure and Defendant's violations of federal and state law.

19. Defendant knew or should have known how long it takes CSRs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work but did not.

20. Defendant knew or should have known that CSRs, including Plaintiffs, worked overtime hours for which they were not compensated.

21. Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them, the Collective and Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## **JURISDICTION**

22. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

23. Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

24. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the sum or value of the controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different states.

25. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

26. This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

27. Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

28. Defendant's CSRs, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

29. Defendant simultaneously operates in two or more states, and so operated at all times relevant hereto.

30. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

31. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

32. This Court has personal jurisdiction over Defendant because it conducts business within the state of Delaware, is incorporated within the State of Delaware and employs individuals within the state of Delaware.

33. This Court also has personal jurisdiction over Defendant because it has

purposefully availed itself of the privilege of conducting activities in the state of Delaware, has established minimum contacts sufficient to confer jurisdiction over it and is incorporated within this District and Division; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

34. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District and resides within this District.

## PARTIES

35. Plaintiff Donna Spooner ("Plaintiff Spooner") is a Nevada resident who worked for Defendant as a remote CSR in Nevada within the last three (3) years.

36. As stated above, during her employment with Defendant, Plaintiff Spooner worked as a CSR for Defendant, assisting its customers.

37. Defendant paid Plaintiff Spooner for her services in the form of an hourly wage, for all credited hours worked.

38. Plaintiff Spooner signed a consent to join this collective action lawsuit. **Exhibit 1**, Spooner Consent to Join.

39. Plaintiff Byron Worthey ("Plaintiff Worthey") is an Idaho resident who worked for Defendant as a remote CSR in Idaho within the last three (3) years.

40. During his employment with Defendant, Plaintiff Worthey worked as a CSR for Defendant, assisting its customers.

41. Defendant paid Plaintiff Worthey for his services in the form of an hourly wage,

for all credited hours worked.

42. Plaintiff Worthey signed a consent to join this collective action lawsuit. **Exhibit 2**, Worthey Consent to Join.

43. Plaintiff Lisa Hamilton ("Plaintiff Hamilton") is a Nevada resident who worked for Defendant as a remote CSR in Nevada within the last three (3) years.

44. During her employment with Defendant, Plaintiff Hamilton worked as a CSR for Defendant, assisting its customers.

45. Defendant paid Plaintiff Hamilton for her services in the form of an hourly wage, for all credited hours worked.

46. Plaintiff Hamilton signed a consent to join this collective action lawsuit. **Exhibit 3**, Hamilton Consent to Join.

47. Defendant is a Delaware company. According to the State of Delaware Division of Corporations, Defendant's Registered office address is located at 251 Little Falls Drive, Wilmington, Delaware 19808 (File #3697790).

## GENERAL ALLEGATIONS

48. Defendant employed Plaintiffs as remote CSRs from Plaintiffs' home offices within the last three (3) years.

49. Defendant's CSRs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before handling phone calls; (b) taking in-bound calls from and making out-bound calls to individuals who need assistance; (c) ensuring that every call is documented and accounted for in Defendant's system; (d) reading emails daily with work instructions; and (e) logging out of the computer software programs and applications and the

phones and shutting down their computers.

50. Defendant's CSR jobs are hourly, non-exempt positions with rigid schedules that require CSRs, including Plaintiffs, to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek.

51. The CSRs' schedules result in many CSRs routinely working unpaid overtime, as more fully explained herein.

52. Throughout their employment with Defendant, Plaintiffs were required to work a substantial amount of unpaid time, including overtime, as part of their roles as CSRs.

53. At all relevant times, Defendant controlled their CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

54. Defendant was also responsible for training and continuing their CSRs' education in their role as CSRs.

55. Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications, and phone systems.

56. These programs, applications, and systems are integral and an important part of the CSRs' work, and they cannot perform their jobs without them.

57. Defendant's CSRs all follow the same timekeeping process, are subject to the same relevant timekeeping, and attendance policies, and are subject to quality assurance reviews (performance metrics) based on the same or similar criteria.

58. These uniform policies obviously foster significant off-the-clock work, as CSRs must engage in a cumbersome process of booting up their computers, connecting to networks, loading and logging into computer programs, and reviewing emails before the start of every shift, and then log-out and shut down the systems after the end of their scheduled shifts.

59. As a result, CSRs are forced to begin loading and logging into their computer systems well before clocking in and after clocking out (at the end of the day).

60. Additionally, CSRs are routinely required to review emails during their breaks.

61. Furthermore, Defendant's scoring guidelines measure a CSRs' ability to adhere to mandatory protocols and are comprised of various performance metrics, including but not limited to the CSRs' complete and correct resolution of issues and inquiries.

62. These performance metrics necessarily require that CSRs be logged into all computer programs, applications and systems, and have all reference materials and available resources open at the time of the first call.

63. Indeed, Defendant enforces their policy of requiring all computer networks, programs and applications be open and ready before clocking in, through its other performance metrics and schedule adherence policies.

64. Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

65. Because CSRs are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

66. Defendant knew or should have known that off-the-clock work was routinely occurring.

67. Thus, the hours reflected on the CSRs' pay stubs are inaccurate and contrived by Defendant.

68. In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their CSRs for no less than twenty-four (24) minutes per day of work

performed during pre-, mid- and post-shift time.

69. This time could easily be recorded, accounted for, and paid, but Defendant chose not to credit such time as time worked.

### A. Pre-Shift Off-the-Clock Work

70. In addition to their regularly scheduled shifts, and as mentioned above, Defendant's CSRs perform pre-shift work tasks for which they are uncompensated.

71. Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

72. The pre-shift startup and login process takes substantial time on a daily basis with said time averaging fifteen (15) to twenty (20) minutes per day, and the tasks can take longer if CSRs experience technical problems with the computer, software, and/or applications.

73. Prior to the commencement of each scheduled shift, Plaintiffs, as well as the other CSRs, were required to perform a cumbersome and time-consuming process to become call ready and clock in. The process began when the CSRs turned on the computer, waited for Windows to load, then entered a username and password to log into windows. From there, CSRs were required to open a litany of other computer applications including, but not limited to, CACS, Zoom, a VPN system, a phone dialer (Finesse), Citrix, Okta (dual authentication required), Mainframe, Teams, Outlook, Blackbird, Paymentus, Payment Gateway, Ofsll, Java, Speedpay, Oracle, Western Union, and the clock-in system. CSRs required all of these programs to complete their job duties.

74. Prior to the start of their scheduled shifts, Defendant also requires CSRs to read messages with work instructions and announcements for the day.

75. The off-the-clock pre shift computer bootup time to be call ready at the start of their

shift required approximately fifteen (15) to twenty (20) minutes.

76. The aforementioned tasks are an integral and essential aspect of a CSR's job duties and responsibilities. CSRs must have all of the above-referenced computer programs, systems, and applications up and running on their computers in order to be prepared to accept incoming calls.

77. Defendant fails to compensate CSRs for the computer boot up tasks.

78. Instead, as discussed above, Defendant maintains attendance, adherence, overtime, and performance policies that require them to be call-ready at the start of their scheduled shift.

79. As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay CSRs for no less than fifteen (15) minutes per day of work performed in connection with the above pre-shift activities.

80. In addition to the unpaid bootup time, Defendant also required CSRs to address work related emails prior to beginning their shifts.

**B. <u>Meal-Period Off-the-Clock Work</u>**

81. Defendant provides its CSRs with a one hour (60 minute) unpaid lunch break per shift.

82. In reality, Defendant routinely requires CSRs to perform work during their unpaid lunch breaks.

83. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *<u>completely relieved</u>* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special

> conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

84. Defendant does not provide CSRs with a bona fide meal period because its policies and procedures require CSRs to return from their lunch early to perform at least part of the boot up process outlined above and requires CSRs to review emails during breaks.

85. Many of the programs used by CSRs, including the VPN, would automatically log CSRs out of their computer systems if they remained idle for too long. As such, this required CSRs to return from their lunches early to log back into programs that they were automatically logged out of during their lunch breaks.

86. Additionally, Defendant required CSRs to address emails before clocking back in and resuming calls.

87. CSRs spend approximately eight (8) to nine (9) minutes performing this work during their unpaid meal breaks on most days.

88. Defendant's management is aware that CSRs perform these tasks off the clock, and could have paid CSRs for this time, but did not.

### C. <u>**Post-Shift Off-the-Clock Work**</u>

89. Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required at the end of each shift to log out of the essential computer software programs and applications utilized during their shifts.

90. The shutdown and logout process requires another two (1) to two (2) minutes of off the clock work per shift.

91. Pursuant to Defendant's policies, training and direction, Plaintiffs and the other

CSRs are not allowed to begin the shutdown and logout process until their scheduled shift ends and they complete their last fielded call.

92. Defendant did not compensate CSRs for all the time spent shutting down and logging out of their essential work systems.

93. The unpaid off-the-clock work performed after each shift by Plaintiffs and all other CSRs directly benefit Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

### D. Defendant Benefitted from the Uncompensated Off-the-Clock Work

94. At all relevant times, Defendant directed and directly benefitted from the work performed by Plaintiffs and similarly situated employees in connection with the above-described pre-shift, and post-shift activities performed by CSRs.

95. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of their CSRs.

96. At all relevant times, Defendant was able to track the amount of time CSRs spent in connection with the pre-shift, and post-shift activities.

97. Defendant failed to do so and failed to compensate CSRs for the off-the-clock work they performed.

98. At all relevant times, CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

99. At all relevant times, Defendant used their attendance, adherence, performance, and timekeeping policies against the CSRs in order to pressure them into performing the pre-shift, and post-shift off-the-clock work.

100. Defendant expressly trained and instructed CSRs to perform the above-described

pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take calls (i.e., were "phone ready") the moment their shifts began.

101. At all relevant times, Defendant's policies and practices deprived CSRs of wages owed for the pre-shift, and post-shift activities they performed.

102. Because Defendant's CSRs often worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay in many workweeks.

103. Defendant knew or should have known that the time spent by CSRs in connection with the pre-shift, and post-shift activities was compensable under the law.

104. In light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

105. Despite knowing CSRs performed work before and after their scheduled shifts, Defendant failed to make any effort to stop or disallow the off-the-clock work, and instead suffered and permitted it to happen.

106. Unpaid wages related to the off-the-clock work described herein are owed to CSRs at the FLSA mandated overtime premium of one and one-half times their regular hourly rate because CSRs regularly worked in excess of forty (40) hours in a workweek.

**E. Failure to Include Non-Discretionary Incentive Pay in the Calculation of the Overtime Rate**

107. In addition to the above-stated off-the-clock work suffered/permitted by Defendant, Defendant illegally excluded non-discretionary bonuses and incentive payments from CSRs' regular rate of pay and resulting overtime rates of pay, and thus, underpaid Plaintiffs and all other CSRs that worked overtime even for overtime hours it properly credited them as having worked.

108. Under the FLSA, the regular rate is the "keystone" to calculating the overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945). It is "the hourly rate

actually paid the employee for the normal, non-overtime workweek for which he is employed." 29 C.F.R. §778.108.

109. No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. §778.109.

110. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id.*

111. Defendant's compensation scheme, which included an hourly rate, plus incentive and other non-discretionary bonus pay, did not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

112. An hourly plus incentive-based employee's regular rate of pay is computed by reference to the number of hours the incentive payment is intended to compensate. 29 C.F.R. §778.117.

113. This is true regardless of whether the incentive payment is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the incentive payment. *Id.*

114. It does not matter whether the incentive payments are computed daily, weekly, biweekly, semimonthly, monthly, or at some other interval. *Id.*

115. The fact that the incentives are paid on a basis other than weekly, and that payment is delayed for a time past the employee's normal pay day or pay period, does not excuse the

employer from including this payment in the employee's regular rate. *Id.*

116. There is a statutory presumption that remuneration in any form must be included in the regular rate calculation.

117. The burden is on Defendant to establish that any payment should be excluded.

118. Thus, determining the regular rate starts from the premise that all payments made to Plaintiffs for work performed are included in the base calculation unless specifically excluded by statute.

119. Even "[w]hen the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek (except overtime premiums and other payments excluded as provided in section 7(e) of the Act), and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard." 29 C.F.R. §778.118.

120. Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945).

121. The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to rate per hour to determine compliance with the statute.

122. Because Defendant's compensation scheme failed to incorporate all the non-discretionary incentive payments received in the regular rate of pay (and resulting overtime rates of pay), Defendant failed to properly compensate Plaintiffs and its other CSRs under the FLSA.

## FLSA COLLECTIVE ACTION ALLEGATIONS

123. Plaintiffs brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> ***All current and former hourly remote CSRs who worked for Defendant in the United States at any time during the three years preceding the filing of this Complaint up through and including judgment.***

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

124. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated CSRs.

125. Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid for all premium overtime compensation when they worked beyond forty (40) hours in a workweek.

126. Defendant assigned and/or was aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

127. As part of its regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective.

128. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

b. Failing to include all incentive and non-discretionary bonus payments in the calculation of the CSRs' overtime rates; and

c. Willfully failing to record all of the time Plaintiffs and the members of the FLSA Collective worked for the benefit of Defendant;

129. Defendant is aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for all hours worked in excess of forty (40) per workweek.

130. Defendant's unlawful conduct has been widespread, repeated, and consistent.

131. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).

132. The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

133. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay.

134. The key issues – the amount of uncompensated pre-shift start-up/log-in time, and the amount of post-shift shut down/log out time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

135. Many similarly situated current and former CSRs in the FLSA Collective have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

136. Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

137. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

138. Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

139. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

**RULE 23 CLASS ACTION ALLEGATIONS**

140. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> ***All current and former hourly remote CSRs who worked for Defendant in the United States at any time during the applicable statutory period.***

(hereinafter referred to as the "Rule 23"). Plaintiffs reserve the right to amend this definition as necessary.

141. The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

142. There is a well-defined community of interest among Rule 23 members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether Defendant's failure to pay the Rule 23 Class members for all hours worked at their agreed upon rate constitutes a breach of contract.

b. Whether, if no contract exists between the parties, Defendant was unjustly enriched by virtue of its policies and practices with respect to the Rule 23 Class members' pay and off-the-clock work as explained herein.

c. Whether, if no contract exists between the parties, Defendant was unjustly enriched by virtue of its policies and practices with respect to the Rule 23 Class members' incentive payments and the failure to pay at the agreed upon rate.

143. Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Class members.

144. Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

145. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

146. This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

147. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification

is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

148. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**

149. Plaintiffs re-allege and incorporate all previous paragraphs herein.

150. At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

151. At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

152. Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

153. Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

154. At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

155. At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform no less than twenty-four (24) minutes of off-the-clock work per shift, but

failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

156. In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

157. Defendant's violations of the FLSA were knowing and willful.

158. Defendant knew or could have determined how long it takes its CSRs to perform their off-the-clock work.

159. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

160. Defendant knew or should have known how to properly calculate the overtime premiums, given the clear directive from the FLSA and its governing regulations.

161. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
## (Rule 23 Class Action)
## BREACH OF CONTRACT

161. Plaintiffs reallege and incorporate all previous paragraphs herein.

162. This Count applies only to workweeks where the FLSA's overtime protections are inapplicable (less than 40 hours).

163. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Class member to pay each employee for each hour they worked

at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Class members performed on Defendant's behalf.

164. Defendant's contractual promises to pay Plaintiffs and each Rule 23 Class member's applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiffs and the Rule 23 Class members.

165. Additionally, Defendant's contractual promises are set forth in the offer letters and incentive payment schedules provided to Plaintiffs and the Rule 23 Class members.

166. Upon information and belief, each Rule 23 Class member, including Plaintiffs, has an hourly rate of approximately $15.00 to $25.00 per hour.

167. Plaintiffs and every other Rule 23 Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with unlawful policies and practices, described herein.

168. By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Class.

169. On occasion, Plaintiffs and Rule 23 Class members missed time from work causing them to work under 40 hours in a given week.

170. To the extent there is no other state law remedy available, Plaintiffs and the Rule 23 Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40

hours per week.

171. As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and every other member of the Rule 23 Class have been damaged (to the extent there is no other state law remedy) in an amount to be determined at trial.

**COUNT III**
**(Rule 23 Class Action)**
**UNJUST ENRICHMENT**

172. Plaintiffs re-allege and incorporate all previous paragraphs herein except for any paragraph, sentence, or averment that alleges a contract or agreement to pay wages existed between the Plaintiffs and Defendant, including, but not limited to, paragraphs 161-171.

173. This Count is pled in the alternative to Count II, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3) in the event it is determined that no employment contract existed between Plaintiffs and Defendant as alleged in Count II. In other words, to the extent that this Court ultimately finds that no contract governs the claims arising from the allegations in this Complaint, Defendant is nonetheless liable for unjustly enriching itself at Plaintiffs' and the Rule 23 Class members' expense.

174. This Count applies only to workweeks where the FLSA's overtime protections are inapplicable (less than 40 hours).

175. Defendant knowingly accepted and benefited from the unpaid work performed by Plaintiffs and the Rule 23 Class prior to the start of their shifts, during their shifts, and after their shifts. Additionally, Defendant benefited by failing to pay their employees at the promised wage rates.

176. Defendant was aware or should have been aware that it was receiving the benefit of this unpaid work at the time the work was being performed and accepted and retained that

benefit without paying fair compensation for the same.

177. Defendant was aware or should have been aware that Plaintiffs and the Rule 23 Class members expected to be paid for the off-the-clock work set forth herein.

178. Defendant utilized the unpaid wages for its own benefit and to the detriment of Plaintiffs and the Rule 23 Class members.

179. Defendant's acceptance and retention of the benefit of Plaintiffs and the Rule 23 Class members' unpaid labor was inequitable and resulted in Defendant being unjustly enriched.

180. As a direct and proximate result of Defendant's actions, and to the extent there is no other state law remedy available, Plaintiffs and every other Rule 23 Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, on behalf of the putative FLSA Collective and on behalf of the Rule 23 Class requests judgment as follows:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims for common law breach of contract and unjust enrichment (Counts II and III);

c. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and the Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective/Class members of their rights by law to join and participate in this lawsuit;

d. Designating Plaintiffs as the representatives of the FLSA collective action and the Rule 23 Class, and undersigned counsel as Class counsel for the same;

e. Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

f. Declaring Defendant's violation of the FLSA was willful;

g. Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the FLSA Collective and the Rule 23 Class the full amount of damages and liquidated damages available by law;

h. Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

i. Awarding other pre- and post-judgment interest to Plaintiffs on these damages; and

j. Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: July 8, 2026

Respectfully Submitted,

**COLLINS PRICE WARNER WOLOSHIN**

***/s/ Raeann Warner***
Raeann Warner (# 4931)
8 East 13th Street
Wilmington, Delaware 19801
Phone: (302) 655-4600
raeann@cpwwlaw.com

**ASH LAW, PLLC**
Charles R. Ash, IV (*PHV forthcoming*)
43000 W. 9 Mile Rd., Ste. 301
Novi, MI 48375
Phone: (734) 234-5583
cash@nationalwagelaw.com

**RODRIGUEZ LAW PLC**
Oscar A. Rodriguez (*PHV Forthcoming*)
402 W. Liberty St.
Ann Arbor, MI 48103

Phone: (734) 415-9011
oscar@orodlaw.com

*Counsel for Plaintiffs and the*
*Putative Collective/Class Members*